The Vice-Chancellor.—The
case made by the bill, is briefly this. The complainant and his law partner were employed by the defendants as their solicitors, to lend #2800, for them on bond and mortgage. The solicitors looked up an investment which the defendants approved, and thereupon requested the solicitors to examine the title of the property proposed as the security, and if it were satisfactory, to proceed with and complete the transaction ; and further directed them to make the loan or advance the money, which was ready for them whenever required. They agreed to lend the #2800, on the proposed security, if the title were approved.
The solicitors prepared the securities, payable to the defendants, had the mortgage recorded, and examined and approved the title ; and the complainant advanced #800, to the mortgagor, on the securities being completed. The defendants were then informed of what had been done, and they retracted their agreement, refused to complete the loan, or to advance the money to the mortgagor, and also refused to pay the complainant his #800.
He then applied to them to execute an assignment of the bond and mortgage to him, which they also refused.
This appears to be a plain case for equitable interference. The complainant was led into the advance of #800, by his employment as a solicitor and his confidence in his clients good faith and regard for their engagements. On their repudiating the latter, he was entitled either to recover from them the money advanced, or to retain the security of the bond and mortgage for his protection. Whether or not he could have maintained an action against them at law, is in my view, quite immaterial. He was not bound to resort to that remedy, so long as he had the bond and mortgage in his possession, which were probably a more adequate indemnity. The defendants had the legal title to the bond and mortgage, because made to them by their direction ; but they had no actual interest in the same. Under the circumstances they were the trustees of that legal title for *402 the benefit of the complainant, and when requested by him, they ought to have transferred it to him. A proper transfer would have subjected them to no liability or inconvenience.
The defendants claim that the advance was not made, by the complainant as attorney or solicitor, and that he has no lien on the bond and mortgage.
I think he would have had a lien under the state of facts shown, if he had been neither an attorney or a solicitor. I think also, that the advance was- made in the discharge of his duty as a solicitor. He was retained to investigate the title, and he was directed to advance for his clients.
Another objection to the suit is made on the form of the bond and mortgage, which it is said are usurious, because they are executed for $3000, with interest, when the agreement was to lend $2800.
The bill shows that, by the understanding of the parties, the loan was to become full $3000, by the mortgagor’s omission to pay interest on the $2800, until after it made up the $3000. In other words, he was not to pay any interest, until the end of the half year next after the accruing interest, added to the principal, made up $3000, and thereafter he was to pay interest on that sum. This, as stated in the bill, was a valid arrangement, and was more favorable to the borrower than to have paid interest half yearly on $2800, from the date of the bond and mortgage ; and they are not thereby rendered usurious.
Next, it is said that the authority to advance, was made to both solicitors, and for a single sum. Hence, it could not be exercised by one of them, or by an advance of a part of that sum.
As to the joint authority, it was not a contract, nor. governable by. the rules applicable to contracts. It was a direction to the professional agents and advisers of the defendants, and was as well performed by one as by both. I suppose that if these solicitors had been employed by the defendants, in an important chancery suit, in which it became necessary to send $250 to a foreign country, with a commission to take testimony, and on the defendants request that they would advance the money for that purpose, one of them had made the advance from his own *403 funds; he alone could have recovered it from his clients. A compliance with the request by one, being equally beneficial and effectual for the clients, the law will imply a promise to repay him. The request, in such a case, is properly construed to be made of the solicitors severally, as well as jointly.
As to the advance of the whole in one sum, it would be more reasonable to infer that it was to be as the borrower required it. But this was no limited and special authority to do a single act, so that a literal pursuit of its terms was indispensable. It was a part of the general directions to solicitors investing money, and its meaning was, that if the borrower wanted an advance, on leaving his securities, and before they could call on their clients for the money, they were desired to make it. If he wanted $500, the direction would warrant them in advancing that sum, as well as it would the whole. The greater in this case includes the lesser; but it does not exclude it.
There is nothing in tlie objection that the advance was not made to the mortgagor. 11 The person authorized to receive it,” on this bill, is to be deemed the mortgagor.
The demurrer must be overruled.